STATE OF MINNESOTA                          IN DISTRICT COURT

COUNTY OF LYON                          FIFTH JUDICIAL DISTRICT
                                        Case Type:  Contract
                                        Court File No. _____

U.S. Bank National Association
d/b/a U.S. Bank Equipment Finance,
                              Plaintiff,

vs.

English Landscapes, LLC
and Jeffery G. Double,

                    Defendants.

---

## SUMMONS

---

THIS SUMMONS IS DIRECTED TO:  ABOVE-NAMED DEFENDANTS.

1.      **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no Court File Number on this Summons.

2.      **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        Gislason & Hunter LLP
        2700 South Broadway
        P. O. Box 458
        New Ulm, MN  56073

3.      **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4.      **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If YOU DO NOT Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not

need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

     5.    **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

     6.    **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated this 18th day of August, 2021.

                                                  Michael S. Dove  #214310
                                                *mdove@gislason.com*
                                                GISLASON & HUNTER LLP
                                                2700 South Broadway
                                                P. O. Box 458
                                                New Ulm, MN  56073-0458
                                                Phone: 507-354-3111

                                                *Attorneys for Plaintiff*
                                              *U.S. Bank National Association*
                                              *d/b/a U.S. Bank Equipment Finance*

4839-2460-0051.1

STATE OF MINNESOTA                                    IN DISTRICT COURT

COUNTY OF LYON                                   FIFTH JUDICIAL DISTRICT
                                                     Case Type:  Contract
                                                 Court File No. _____

U.S. Bank National Association
d/b/a U.S. Bank Equipment Finance,
                           Plaintiff,

vs.

English Landscapes, LLC
and Jeffery G. Double,
                           Defendants.

---

### COMPLAINT

---

Plaintiff U.S. Bank National Association d/b/a U.S. Bank Equipment Finance, as and for

its Complaint against Defendants English Landscapes, LLC and Jeffery G. Double, state and allege

as follows:

1.

U.S. Bank National Association is a national banking association that does business as U.S.

Bank Equipment Finance ("U.S. Bank") and has an address applicable to these proceedings of

1310 Madrid Street, Marshall, MN  56258.

2.

Defendant English Landscapes, LLC ("English Landscapes") is a Georgia limited liability

company with an office address of 13200 U.S. Hwy. 80E, Brooklet, GA 30415.

3.

Defendant Jeffery G. Double ("Double") is an individual who, upon information and belief,

resides at 13200 U.S. Hwy. 80E, Brooklet, GA 30415.

4.

Pursuant to the Agreement (as defined hereafter), jurisdiction and venue is appropriate in any state and/or federal court located in the State of Minnesota. Thus, jurisdiction of this court and venue of this action are proper.

## BACKGROUND
### Agreement

5.

U.S. Bank and English Landscapes entered into an Equipment Finance Agreement dated on or about May 31, 2018, (the "Agreement") for the purchase of one (1) 2018 Bandit 20XP Chipper, S/N 506841, together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries (the "Equipment"). A true and correct copy of the Agreement is incorporated herein by reference and attached hereto as **Exhibit A.**

6.

In connection with the financing provided to English Landscapes, Double executed a Personal Guaranty dated May 31, 2018, (the "Guaranty"), in which Double unconditionally and absolutely guaranteed all of English Landscapes' indebtedness due and owing under the Agreement. A true and correct copy of the Guaranty is incorporated herein by reference and attached hereto as **Exhibit B.**

7.

English Landscapes failed to make the payments due to U.S. Bank under the terms of the Agreement, which constitutes an event of default under the Agreement.

2

4843-5405-7203.1

8.

Double failed to make the payments due to U.S. Bank under the terms of the Guaranty, which constitutes an event of default under the Guaranty.

9.

The Equipment was repossessed by U.S. Bank, and the Equipment was sold in a commercially reasonable manner.

10.

As of November 10, 2020, the amount due and owing to U.S. Bank under the Agreement and Guaranty was $98,659.82 (the "Indebtedness"). Interest accrues on the Indebtedness at the per diem rate of $32.44.

11.

In addition to the Indebtedness, English Landscapes and Double are obligated to U.S. Bank for collection costs, including attorneys' fees and court costs, under the terms of the Agreement and Guaranty, respectively.

## COUNT I
## BREACH OF AGREEMENT

12.

U.S. Bank restates the allegations set forth above, inclusive, as though fully set forth herein.

13.

As a consequence of English Landscapes' default under the terms of the Agreement, U.S. Bank is now entitled to a judgment against English Landscapes in the amount of $98,659.82, plus interest after November 10, 2020, and collection costs, including attorneys' fees and court costs.

3

4843-5405-7203.1

## COUNT II
## BREACH OF GUARANTY

14.

U.S. Bank restates the allegations set forth above, inclusive, as though fully set forth herein.

15.

As a consequence of Double's failure to pay the Indebtedness to U.S. Bank pursuant to the terms of the Guaranty, U.S. Bank is entitled to a judgment against Double, individually, for the entirety of the Indebtedness of $98,659.82, plus interest after November 10, 2020, and collection costs, including attorneys' fees and court costs.

WHEREFORE, U.S. Bank prays for judgment as follows:

a. On Count I, for a judgment against Defendant English Landscapes, LLC, in the amount of $98,659.82, plus accrued and unpaid interest after November 10, 2020, and collection costs, including attorneys' fees and expenses;

b. On Count II, for judgment against Jeffery G. Double, individually, in the amount of $98,659.82, plus accrued and unpaid interest after November 10, 2020, and collection costs, including attorneys' fees and expenses; and

c. For such other relief as the Court deems just and equitable.

The undersigned hereby acknowledges that sanctions may be awarded pursuant to Minn. Stat. § 549.211.

Dated this 18th day of August, 2021.

Michael S. Dove  #214310
GISLASON & HUNTER LLP
2700 South Broadway
P. O. Box 458
New Ulm, MN  56073-0458
Phone:  507-354-3111
Fax:  507-354-8447
E-mail:  mdove@gislason.com

*Attorneys for Plaintiff*
*U.S. Bank National Association*
*d/b/a U.S. Bank Equipment Finance*

4

4843-5405-7203.1

## **VERIFICATION**

Shawna Thooft, being first duly sworn, deposes and says that she is the Loss Mitigation Specialist of U.S. Bank National Association, d/b/a U.S. Bank Equipment Finance, that she has reviewed the allegations of the foregoing Complaint, and that the same are true of her knowledge, except as to matters stated on information and belief, and as to those matters, she believes them to be true.

I declare under penalty of perjury that everything I have stated in this document is true and correct.

Dated this _16th_ day of August, 2021, at Lyon County, Minnesota.

Shawna Thooft
_____
Shawna Thooft
U.S. Bank National Association
d/b/a U.S. Bank Equipment Finance
1310 Madrid St.
Marshall, MN  56258

4843-5405-7203.1



**Equipment Finance Agreement**



6/5/18

**AGREEMENT NO.**

# EQUIPMENT FINANCE

Send Account Inquiries to: 1310 Madrid Street · Marshall, MN 56258
Send Payments to: PO Box 790448 · St. Louis MO 63179-0448

The words "Debtor," "you" and "your" refer to Customer. The words "Secured Party," "we," "us" and "our" refer to U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("U.S. Bank Equipment Finance").

## CUSTOMER INFORMATION

| FULL LEGAL NAME | STREET ADDRESS | |
|---|---|---|
| ENGLISH LANDSCAPES LLC | 13200 US HWY 80E | |

| CITY          STATE | ZIP | PHONE | FAX |
|---|---|---|---|
| BROOKLET, GA  30415 | | (912) 682-6229 | |

| EQUIPMENT LOCATION (IF DIFFERENT FROM ABOVE) | E-MAIL |
|---|---|
| 13200 US HWY 80E, BROOKLET, GA  30415 | |

| BILLING STREET ADDRESS (IF DIFFERENT FROM CUSTOMER ADDRESS ABOVE) | CITY | STATE | ZIP |
|---|---|---|---|
| PO BOX 959 | BROOKLET, GA  30415 | | |

## EQUIPMENT DESCRIPTION

1- 2018 BANDIT 20XP CHIPPER S/N 506841

*together with all replacements, parts, repairs, additions, and accessions incorporated therein or attached thereto and any and all proceeds of the foregoing, including, without limitation, insurance recoveries.*

☐ See attached Schedule A

## PAYMENT & TERM INFORMATION

Advance Payment: $0.00

Amount Financed: $186,328.45

*(including any applicable taxes)*

72 Payments of $3,092.40

The payment ("Payment") period is monthly unless otherwise indicated.

## THIS AGREEMENT IS NONCANCELABLE, IRREVOCABLE AND CANNOT BE TERMINATED.

**1. AGREEMENT:** You have requested that we finance the purchase price of the goods ("Equipment") and, if applicable, finance certain software and/or software license(s) ("Licensed Software"), software components, including but not limited to, software maintenance and/or support ("Products") and/or implementation, integration, training, technical consulting and/or professional services in connection with software ("Services") (collectively, the "Financed Items," which are included in the word "Equipment" unless separately stated) from software licensor(s) and/or supplier(s) (collectively, the "Supplier"), all as described in this Agreement and in any attached schedule, addendum or amendment hereto ("Agreement"). You represent and warrant that you will use the Equipment for business purposes only. You agree to all of the terms and conditions contained in this Agreement, which, with the acceptance certification, is the entire agreement between you and us regarding the Equipment and which supersedes any purchase order, invoice, request for proposal, response or other related document. This Agreement becomes valid upon execution by us. The term shall start on the date we pay Supplier. If no advance payment is required, the first Payment is due 30 days after the start of this Agreement and each Payment thereafter shall be due on the same day of each month unless a different due date is mutually agreed to by us and you. If any provision of this Agreement is declared unenforceable, the other provisions herein shall remain in full force and effect to the fullest extent permitted by law. This Agreement may not be prepaid.

**2. OWNERSHIP; PAYMENTS; TAXES AND FEES:** You are the owner of the Equipment, excluding any Licensed Software. Ownership of any Licensed Software shall remain with Supplier thereof. You will pay all Payments, as adjusted, when due, without notice or demand and without abatement, set-off, counterclaim or deduction of any amount whatsoever. If any part of a Payment is more than 5 days late, you agree to pay a late charge of 10% of the Payment which is late or, if less, the maximum charge allowed by law. The Payment and Amount Financed may be adjusted proportionately upward or downward: (i) by up to 10% to accommodate changes in the Equipment cost; (ii) if the shipping charges differ from the estimate given to you; and/or (iii) if a down payment or deposit is deducted. You shall pay when due all taxes (including personal property taxes), assessments, levies, imposts, duties and charges, of any kind or nature, imposed upon the Equipment or for its use or operation or upon this Agreement. At our option, we may discharge taxes, liens or other encumbrances at any time levied or placed on the Equipment and may pay for the maintenance and preservation of the Equipment, and you agree to reimburse us when we request. You agree to pay us a fee of up to $50 for filing, searching and/or titling costs required under the Uniform Commercial Code ("UCC") or other laws. You agree to pay us an origination fee of $0.00 for all closing costs. We may apply all sums received from you to any amounts due and owed to us under the terms of this Agreement. If for any reason your check is returned for insufficient funds, you will pay us a service charge of $30 or, if less, the maximum charge allowed by law. We may make a profit on any fees and other charges paid under this Agreement.

## CUSTOMER ACCEPTANCE

BY SIGNING BELOW OR AUTHENTICATING AN ELECTRONIC RECORD HEREOF, YOU CERTIFY THAT YOU HAVE REVIEWED AND DO AGREE TO ALL TERMS AND CONDITIONS OF THIS AGREEMENT ON THIS PAGE AND ON PAGE 2 ATTACHED HERETO.

| ENGLISH LANDSCAPES LLC | X | MEMBER |
|---|---|---|
| CUSTOMER (AS REFERENCED ABOVE) | SIGNATURE JEFFERY DOUBLE | TITLE |

| FEDERAL TAX IDENTIFICATION NUMBER | PRINT NAME | 5-31-18 (DATED) |
|---|---|---|

## SECURED PARTY ACCEPTANCE

| U.S. Bank Equipment Finance | | Authorized Signatory |
|---|---|---|
| SECURED PARTY | SIGNATURE | TITLE   6/5/18  DATED |

11018 (2017) REV 11/17

**3. EQUIPMENT; SECURITY INTEREST:** At your expense, you shall keep the Equipment: (i) in good repair, condition and working order, in compliance with applicable laws, ordinances and manufacturers' and regulatory standards; (ii) free and clear of all liens and claims; and (iii) at your address shown on page 1, and you agree not to move it unless we agree in writing. In the event the Equipment is transferred, you are solely responsible for removing any data that may reside in the Equipment, including but not limited to hard drives, disk drives or any other form of memory. You grant us a security interest in the Equipment to secure all amounts you owe us under this Agreement or any other agreement with us ("Other Agreements"), except amounts under Other Agreements which are secured by land and/or buildings. You authorize and ratify our filing of any financing statement(s) and the naming of us on any vehicle title(s) to show our interest. You will not change your name, state of organization, headquarters or residence without providing prior written notice to us. You will notify us within 30 days if your state of organization revokes or terminates your existence

**4. INSURANCE; INDEMNITY; LOSS OR DAMAGE:** You agree to keep the Equipment fully insured against all risk, with us named as lender's loss payee, in an amount not less than the full replacement value of the Equipment until this Agreement is terminated. You will provide written notice to us within 10 days of any modification or cancellation of your insurance policy(s). You agree to provide us certificates or other evidence of insurance acceptable to us. We are not responsible for, and you agree to hold us harmless and reimburse us for and to defend on our behalf against, any claim for any loss, expense, liability or injury caused by or in any way related to delivery, installation, possession, manufacture, use, condition, inspection, removal, or storage of the Equipment. All indemnities will survive the expiration or termination of this Agreement. You are responsible for any loss, theft, destruction or damage to the Equipment ("Loss"), regardless of cause, whether or not insured. You agree to promptly notify us in writing of any Loss. If a Loss occurs, you will promptly pay to us the unpaid balance of this Agreement, including any future Payments to the end of the term, discounted to present value at 2%. Any proceeds of insurance will be paid to us and credited against the Loss. You authorize us to sign on your behalf and appoint us as your attorney-in-fact to endorse in your name any insurance drafts or checks issued due to a Loss.

**5. ASSIGNMENT:** YOU SHALL NOT SELL, TRANSFER, ASSIGN, ENCUMBER, PLEDGE OR LEASE THE EQUIPMENT OR THIS AGREEMENT, without our prior written consent. You shall not consolidate or merge with or into any other entity, distribute, sell or dispose of all or any substantial portion of your assets other than in the ordinary course of business, without our prior written consent, and the surviving, or successor entity or the transferee of such assets, as the case may be, shall assume all of your obligations under this Agreement by a written instrument acceptable to us. No event shall occur which causes or results in a transfer of majority ownership of you while any obligations are outstanding hereunder. We may sell, assign, or transfer this Agreement without notice to or consent from you. You agree that if we sell, assign or transfer this Agreement, our assignee will have the same rights and benefits that we have now and will not have to perform any of our obligations. You agree that our assignee will not be subject to any claims, defenses, or offsets that you may have against us. This Agreement shall be binding on and inure to the benefit of the parties hereto and their respective successors and assigns.

**6. DEFAULT AND REMEDIES:** You will be in default if: (i) you do not pay any Payment or other sum due to us or you fail to perform in accordance with the covenants, terms and conditions of this Agreement or any other agreement with us or any of our affiliates or fail to perform or pay any related agreement with any other entity; or (ii) you make or have made any false statement or misrepresentation to us; (iii) you or any guarantor dies, dissolves, liquidates, terminates existence or is in bankruptcy; (iv) you or any guarantor suffers a material adverse change in its financial, business or operating condition; or (v) any guarantor defaults under any guaranty for this Agreement. If you are ever in default, at our option, we can cancel this Agreement and require that you pay the unpaid balance of this Agreement, including any future Payments to the end of term, discounted to present value at 2%. We may recover default interest on any unpaid amount at the rate of 12% per year. Concurrently and cumulatively, we may also use any remedies available to us under the UCC and any other law, including, but not limited to: (a) cause the termination of the Financed Items and you irrevocably consent to such termination of the Financed Items by Supplier; and (b) require you to immediately stop using the Financed Items. If we take possession of the Equipment, you agree to pay the costs of repossession, moving, storage, repair and sale. The net proceeds of the sale of any Equipment will be credited against what you owe us under this Agreement and you will be responsible for any deficiency. In the event of any dispute or enforcement of our rights under this Agreement or any related agreement, you agree to pay our reasonable attorneys' fees (including any incurred before or at trial, on appeal or in any other proceeding), actual court costs and any other collection costs, including any collection agency fee. WE SHALL NOT BE RESPONSIBLE TO PAY YOU ANY CONSEQUENTIAL, INDIRECT OR INCIDENTAL DAMAGES FOR ANY DEFAULT, ACT OR OMISSION BY ANYONE. Any delay or failure to enforce our rights under this Agreement will not prevent us from enforcing any rights at a later time. You agree that your rights and remedies are governed exclusively by this Agreement. If interest is charged or collected in excess of the maximum lawful rate, we will refund such excess to you, which will be your sole remedy.

**7. INSPECTIONS AND REPORTS:** We have the right, at any reasonable time, to inspect the Equipment and any documents relating to its installation, use, maintenance and repair. Within 30 days after our request (or such longer period as provided herein), you will deliver all requested information (including tax returns) which we deem reasonably necessary to determine your current financial condition and faithful performance of the terms hereof. This may include: (i) compiled, reviewed or audited annual financial statements (including, without limitation, a balance sheet, a statement of income, a statement of cash flow, a statement of changes in equity and notes to financial statements) within 120 days after your fiscal year end; and (ii) management-prepared interim financial statements within 45 days after the requested reporting period(s). Annual statements shall set forth the corresponding figures for the prior fiscal year in comparative form, all in reasonable detail without any qualification or exception deemed material by us. Unless otherwise accepted by us, each financial statement shall be prepared in accordance with generally accepted accounting principles consistently applied and shall fairly and accurately present your financial condition and results of operations for the period to which it pertains. You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents.

**8. FINANCED ITEMS: LICENSED SOFTWARE, PRODUCTS AND SERVICES:** You have elected to finance any Financed Items, including but not limited to Licensed Software, Products and/or Services, as further described on page 1 of this Agreement. Any Financed Items shall be provided by a Supplier unrelated to us, and your rights with respect to such Financed Items shall be governed by a separate agreement between you and Supplier, which shall not be affected by this Agreement. IN NO EVENT SHALL WE HAVE ANY OBLIGATION TO PROVIDE ANY FINANCED ITEMS, AND ANY FAILURE OF SUPPLIER TO PROVIDE ANY FINANCED ITEMS SHALL NOT EXCUSE YOUR OBLIGATIONS TO US IN ANY WAY. WE SHALL NOT BE LIABLE TO YOU, NOR SHALL THERE BE ANY ABATEMENT OR SETOFF IN YOUR PAYMENTS, FOR ANY LIABILITY, CLAIM, LOSS, DAMAGE OR EXPENSE OF ANY KIND OR NATURE CAUSED BY ANY FINANCED ITEMS.

**9. USA PATRIOT ACT NOTICE; ANTI-TERRORISM AND ANTI-CORRUPTION COMPLIANCE:** To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each customer who opens an account. When you enter into a transaction with us, we ask for your business name, address and other information that will allow us to identify you. We may also ask to see other documents that substantiate your business identity. You and any other person who you control, own a controlling interest in, or who owns a controlling interest in, or otherwise controls you in any manner ("Representatives") are and will remain in full compliance with all laws, regulations and government guidance concerning foreign asset control, trade sanctions, embargoes, and the prevention and detection of money laundering, bribery, corruption, and terrorism, and neither you nor any of your Representatives is or will be listed in any Sanctions-related list of designated persons maintained by the U.S. Department of Treasury's Office of Foreign Assets Control or successor or the U.S. Department of State. You shall, and shall cause any Representative to, provide such information and take such actions as are reasonably requested by us in order to assist us in maintaining compliance with anti-money laundering laws and regulations.

**10. MISCELLANEOUS:** Unless otherwise stated in an addendum hereto, the parties agree that: (i) this Agreement and any related documents hereto may be authenticated by electronic means, (ii) the "original" of this Agreement shall be the copy that bears your manual, facsimile, scanned or electronic signature and that also bears our manually or electronically signed signature and is held or controlled by us; and (iii) to the extent this Agreement constitutes chattel paper (as defined by the UCC), a security interest may only be created in the original. You agree not to raise as a defense to the enforcement of this Agreement or any related documents that you or we executed or authenticated such documents by electronic or digital means or that you used facsimile or other electronic means to transmit your signature on such documents. Notwithstanding anything to the contrary herein, we reserve the right to require you to sign this Agreement or any related documents hereto manually and to send to us the manually signed, duly executed documents via overnight courier on the same day that you send us the facsimile, scanned or electronic transmission of the documents. You agree to execute any further documents that we may request to carry out the intents and purposes of this Agreement. Whenever our consent is required, we may withhold or condition such consent in our sole discretion, except as otherwise expressly stated herein. From time to time, Supplier may extend to us payment terms for Equipment financed under this Agreement. If Supplier has assigned or referred it to us. All notices shall be mailed or delivered by facsimile transmission or overnight courier to the respective parties at the addresses shown on this Agreement or such other address as a party may provide in writing from time to time. By providing us with a telephone number for a cellular phone or other wireless device, including a number that you later convert to a cellular number, you are expressly consenting to receiving communications, including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system, from us and our affiliates and agents at that number. This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls for non-marketing purposes. Calls and messages may incur access fees from your cellular provider. You authorize us to make non-material amendments (including completing and conforming the description of the Equipment) on any document in connection with this Agreement. Unless stated otherwise herein, all other modifications to this Agreement must be in writing and signed by each party or in a duly authenticated electronic record. This Agreement may not be modified by course of performance.

**11. WARRANTY DISCLAIMERS:** YOU HAVE SELECTED SUPPLIER AND THE EQUIPMENT BASED UPON YOUR OWN JUDGMENT. WE DO NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE EQUIPMENT. SUPPLIER IS NOT AN AGENT OF OURS AND WE ARE NOT AN AGENT OF SUPPLIER, AND NOTHING SUPPLIER STATES OR DOES CAN AFFECT YOUR OBLIGATIONS HEREUNDER. YOU WILL MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST ANY SUPPLIER, LICENSOR OR MANUFACTURER, AND ANY FAILURE OF A SERVICE PROVIDER TO PROVIDE SERVICES WILL NOT EXCUSE YOUR OBLIGATIONS TO USE UNDER THIS AGREEMENT. WE MAKE NO WARRANTIES, EXPRESS OR IMPLIED, OF, AND TAKE ABSOLUTELY NO RESPONSIBILITY FOR, MERCHANTABILITY, FITNESS FOR ANY PARTICULAR PURPOSE, CONDITION, QUALITY, ADEQUACY, INSTALLATION, PERFORMANCE, SAFETY, TITLE, DATA ACCURACY, SYSTEM INTEGRATION, FUNCTION, DEFECTS, INFRINGEMENT OR ANY OTHER ISSUE IN REGARD TO THE EQUIPMENT, ANY ASSOCIATED SOFTWARE AND ANY FINANCED ITEMS. YOU ACKNOWLEDGE THAT THE EQUIPMENT IS EXTREMELY HAZARDOUS WHEN NOT ASSEMBLED, USED OR DISMANTLED PROPERLY. YOU ASSUME ALL RISKS ASSOCIATED WITH THE USE OF SUCH EQUIPMENT.

**12. LAW; JURY WAIVER:** This Agreement will be governed by and construed in accordance with Minnesota law. You consent to jurisdiction and venue of any state or federal court in Minnesota and waive the defense of inconvenient forum. For any action arising out of or relating to this Agreement or the Equipment, BOTH PARTIES WAIVE ALL RIGHTS TO A TRIAL BY JURY.

X CUSTOMER INITIALS: _JGD_

11018 (2017) REV 11/17



**PERSONAL GUARANTY**

EQUIPMENT FINANCE

**AGREEMENT #**

Customer:  ENGLISH LANDSCAPES LLC

The words **Lessor/Secured Party, we, us** and **our** refer to U.S. Bank Equipment Finance, a division of U.S. Bank National Association ("USBEF").  The words **you, your** and Guarantor refer to the undersigned Guarantor.

As additional inducement for us to enter into the above-referenced Agreement (the "Agreement"), the undersigned ("you") unconditionally and absolutely, jointly and severally, guarantees the full and prompt payment, performance and discharge of each and every obligation of the above-named Customer required under the Agreement and any addenda, schedules and supplements thereto. This is a continuing Guaranty and shall not be revoked by your death, bankruptcy, incompetency or insolvency.  You may not terminate or revoke this Guaranty without written notice to us, and this Guaranty shall continue in full force and effect with regard to all of Customer's obligations arising prior to the date of such notice.  You agree that we may make changes, including compromise or settlement, with the Customer, and you waive all defenses and notice of those changes and you will remain irrevocably responsible for the payment and obligations of the Agreement.  We do not have to notify you if the Customer is in default.  If the Customer defaults, you will immediately pay all sums due and will perform all the obligations under the terms of the Agreement.  It is not necessary for us to proceed first against the Customer or any collateral before enforcing this Guaranty.  Your obligations will not be subject to any abatement, setoff, defense or counterclaim for any reason.  You certify that the financial information you have given us is true, complete and accurate in all material respects.  Within thirty (30) days of our request, you will deliver to us all requested information in order for us to determine your current financial condition.  You authorize us to obtain credit bureau reports for credit and collection purposes and to share them with our affiliates and agents.  Without our prior written consent, you will not transfer your obligations under this Guaranty or all or substantially all your assets to any person or entity.  This Guaranty shall be binding upon and inure to the benefit of the parties' estates, heirs, successors and assigns.  We may assign this Guaranty without notice to you.  You expressly consent to the laws and jurisdiction of the courts in Minnesota and agree to pay all costs, including attorneys' fees (including any before or at trial, on any appeal and in any other proceeding), incurred in any dispute regarding or enforcement of this Guaranty and the Agreement.

**USA PATRIOT ACT NOTICE.** IMPORTANT INFORMATION ABOUT PROCEDURES: To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. We will ask for each person in a financial transaction their name, address and other information that will allow us to identify such person. We may also ask to see other documents that substantiate a person's identity.

By providing us with a telephone number for a cellular phone or other wireless device, including a number that you later convert to a cellular number, you are expressly consenting to receiving communications, including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system, from us and our affiliates and agents at that number.  This express consent applies to each such telephone number that you provide to us now or in the future and permits such calls for non-marketing purposes.  Calls and messages may incur access fees from your cellular provider.  A fax or scanned copy of this Guaranty with authorized signatures will be considered the original and will be binding on all parties for all purposes.

**YOU AND WE IRREVOCABLY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY LITIGATION RELATED TO THIS GUARANTY.**

This Guaranty is duly executed and delivered as of _____5-31_____ , 20 _18_ .

GUARANTOR:

By: _____

Print Name: JEFFERY G  DOUBLE

Home Address: 13200 US Hwy 80 E   Brooklet, GA  304.5

Home Phone #: 912-1682-6225

ADDRESSES FOR ALL NOTICES TO LESSOR/SECURED PARTY:
1310 Madrid Street
Marshall, MN  56258

NOTE:  CAPITALIZED TERMS IN THIS DOCUMENT ARE DEFINED AS IN THE AGREEMENT, UNLESS SPECIFICALLY STATED OTHERWISE.
10076 REV 11/16

**EXHIBIT B, PAGE 1**